IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| KASTLER OF THE FAMILY JOSEPH, | ) |  |
| --- | --- | --- |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | 2:19-cv-00781 |
| WASHINGTON COUNTY DOMESTIC RELATIONS UNIT, ALLEGHENY COUNTY DOMESTIC RELATIONS UNIT, WASHINGTON COUNTY, ALLEGHENY COUNTY, | ) ) ) ) ) |  |
|  | ) |  |
| Defendants. | ) |  |

## **OPINION**

**Mark. R. Hornak, Chief United States District Judge**

Kastler Joseph[1] ("the Plaintiff") filed a Complaint alleging that the "Domestic Relations Units"[2] of Washington County and Allegheny County, Pennsylvania, and the counties themselves (collectively "the Defendants"), violated his rights under the Constitution in violation of 42 U.S.C. § 1983. (ECF No. 1, at 12.) The Plaintiff also alleges the Defendants violated 18 U.S.C. § 241, "Conspiracy against rights." (*Id.*) All four Defendants moved to dismiss. (ECF Nos. 11, 20, 28.)

---

[1] The Plaintiff appears to be playing fast and loose with his true name. He has listed his party name as "Kastler of the Family Joseph." Yet, in some of his signatures on the pleadings he is just "Kastler Joseph." (*See* ECF No. 1, at 9, 14.) Then in the second attachment to the Complaint, he calls himself "Joseph of the Family Kastler" and "Joe of the Family Kastler." (ECF No. 1-2, at 1.) The Court notes that it could dismiss the Complaint on this basis as well. Fed. R. Civ. P. 10(a) requires all filings to have the parties' true names. *See Dotson v. Bravo*, 321 F.3d 663, 668 (7th Cir. 2003) ("Filing a case under a false name deliberately, and without sufficient justification, certainly qualifies as flagrant contempt for the judicial process and amounts to behavior that transcends the interests of the parties in the underlying action."); *William of the Family Rigby v. Miller*, No. 17-cv-1415, 2018 WL 623529, at *1 n.1 (W.D. Pa. Jan. 30, 2018) (Schwab, J.) (citing *K.W. v. Holtzapple*, 299 F.R.D. 438 (M.D. Pa. July 10, 2014)) (stating that the plaintiff's self-identification in the "<first name> of the family <last name>" format could be grounds for dismissal).

[2] More accurately, the Plaintiff is seeking to sue the Domestic Relations Sections of the Court of Commons Pleas of Washington County and Allegheny County. *See* WASHINGTON COUNTY COURTS DOMESTIC RELATIONS, https://bit.ly/2vrG2HY (last visited January 27, 2020); DOMESTIC RELATIONS SECTIONS, https://bit.ly/2RuuP1S (last visited January 27, 2020).

1

The Plaintiff responded and no Replies were filed, after which point this matter became ripe for disposition. (ECF Nos. 30, 33.) For the following reasons, the Defendants' Motions are granted and the Plaintiff's Complaint is dismissed. Leave to amend the Complaint is denied as futile.

I. **STATEMENT OF THE FACTS**

The facts discernible from the Plaintiff's filings are few.[3] Yet he recites a litany of constitutional violations for what appear to be typical paternity and child support issues arising under state law. What the Court has been able to discern is that the Plaintiff was allegedly compelled to appear in administrative hearings in October 2015 by the Domestic Relations Unit in Washington County. (ECF No. 1, at 1.) The Plaintiff's appearances were compelled by threat of arrest and having a "default (loan) order[] taken out against [him]." (*Id.*) He later had to provide his paystubs, social security number, and DNA. (*Id.* at 2.) The Court believes, although it cannot say for sure given the lack of detail, that these proceedings relate to the Plaintiff's paternity and child support payments. (*See id.* at 2 ("Fraudulent deceit was used so Domestic Relations Title IV-D services would meet its quota for paternity establishment").) The Plaintiff asserts that his forced appearance and provision of other information and DNA violated the First Amendment, Fourth Amendment, Fifth Amendment, and his freedom to contract. (*Id.* at 1–2.)

The Plaintiff was later required to pay $600 per month in support at a rate of $138 per week. (*Id.* at 2.) To whom or for what, the Plaintiff does not say. Later in the Complaint, he characterizes these payments as wage garnishment. (*Id.* at 3.) What the Plaintiff does say is that

---

[3] With his Complaint, the Plaintiff also served several interrogatories on the Defendants. (ECF No. 1-1.) The interrogatories are mainly concerned with the Plaintiff's own legal conclusions and the notion that the Domestic Relations Units have a profit motive for enforcing child support orders. They do not provide any additional facts beyond confirming the Court's suspicion that all of this has to do with the Plaintiff's unpaid child support. (*See id.* at 7.) The Plaintiff also attached what appears to be a complaint filed in state court against the Pennsylvania Department of Human Resources, Domestic Relations Unit Division, (ECF No. 1-2), and a legal memorandum on municipal liability, (ECF No. 1-3). Similarly, neither is helpful at illuminating the facts.

2

these payments deprived him of his entitlement "to privileges and immunities," as well as of his "[p]roperty, life, [and] liberty" under the Fifth and Fourteenth Amendments. (*Id.* at 2–3.) Throughout the Complaint, the Plaintiff alleges that the Defendants forced him to enter into contracts under duress, rendering them void. (*Id.* at 3.) Those "contracts" supposedly compelled him to make support payments. (*Id.* at 3.)

In March 2017, the "Domestic Relations Unit (single and separate)" entered a "default (loan) order of $7,893.48" against the Plaintiff. (*Id.* at 3.) The Court can only speculate that this order came as a result of the Plaintiff's failure to pay child support. The Plaintiff sought to modify "the contract"—presumably meaning the child support order—and a hearing was set in March 2018, at which a "Domestic Relations Unit agent" allegedly concluded that the Plaintiff did not make enough money to continue to make payments. (*Id.* at 4.) Even so, the courts neither modified nor set aside the support order. (*Id.*) Later, the Plaintiff had to appear for another hearing (he does not say what for) and he also had his income tax refund offset. (*Id.*) Finally, the Plaintiff states that the Domestic Relations Unit of Washington County (and therefore Washington County itself) "sold/transferred the debt/contract over to DRD [sic] in Allegheny County and they have placed a lien on [his] Banking account." (*Id.* at 5.) The transition of enforcement actions from Washington County to Allegheny County was likely because of the Plaintiff's apparent move. (*Id.* at 6.)

The Plaintiff ascribes several motives to the Defendants. He believes that the Domestic Relations Units are proceeding against him to "increase their profit margins," "meet their quarterly quota," and "receive [their] multi-billion dollar share of the federal profits thru [sic] collections of support awarded." (*Id.* at 3.)

Whatever the genesis of the actions taken by the Defendants against the Plaintiff, these enforcement actions financially impacted the Plaintiff. The Plaintiff seeks to have the support order

3

"discharged COMPLETELY," any money taken refunded to him, to obtain damages for emotional distress, and to receive a letter of apology from all agencies involved in "defaming my Reputation." (*Id.* at 8–9 (emphasis in original).)

## II. LEGAL STANDARDS

The Defendants all moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), except for Washington County, which moved pursuant only to Rule 12(b)(6).

### A. Rule 12(b)(1) Motions

Rule 12(b)(1) allows dismissal for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), the burden of proving subject matter jurisdiction over a defendant falls on the plaintiff. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). The challenge to subject matter jurisdiction here is mainly based on the Eleventh Amendment, the *Rooker-Feldman* doctrine, and *Younger* abstention. Therefore, the Defendants make a "facial challenge." *Urella v. Pennsylvania State Troopers Ass'n*, 628 F. Supp. 2d 600, 604 (E.D. Pa. 2008) When reviewing the Plaintiff's Complaint in light of a facial challenge, the Court must accept all factual allegations as true and construe all disputed facts in his favor. *Id.* (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

### B. Rule 12(b)(6) Motions

Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Complaints therefore must allege facts "sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). When determining whether dismissal is appropriate, the Court must: "(1) identify[ ] the elements of the claim, (2) review[ ] the complaint to strike conclusory allegations, and then (3) look[ ] at the well-pleaded components

4

of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The Court should "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 431 (3d Cir. 2017) (citing *Fowler*, 578 F.3d at 210). "A Rule 12(b)(6) motion should be granted when it appears to a certainty that no relief can be granted under any set of facts which could be proved." *Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 350 (3d Cir. 2012).

### C. *Pro Se* Pleadings

The Plaintiff filed his Complaint *pro se*. As a result, the Court holds the Complaint to a less stringent standard and the Court must liberally construe the Plaintiff's pleading. *Becker v. Comm'r*, 751 F.2d 146, 149 (3d Cir. 1984); *see also Carter v. Kane*, 717 F. App'x 105, 108 (3d Cir. 2017) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (holding the same post-*Twombly* and *Iqbal*). That said, even "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### III. DISCUSSION AND ANALYSIS

The Court can begin by addressing the Plaintiff's claims under 18 U.S.C. § 241. Section 241 of Title 18 is a federal criminal provision. Citizens do not have a private right of action to bring claims under federal criminal statutes. *Smalls v. Riviera Towers Corp.*, 782 F. App'x 201, 206 (3d Cir. 2019) (citing *Leeke v. Timmerman*, 454 U.S. 83, 85–86 (1981)) (dismissing a plaintiff's claim brought under 18 U.S.C. §§ 241 and 242). If the Plaintiff seeks to base any of his claims solely under section 241, those claims would be dismissed with prejudice, and they could not be cured by amendment.

5

But, at the outset, the Court must also determine whether it has subject matter jurisdiction, and if so, whether it should assert it. *Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Phila.*, 657 F.2d 29, 36 (3d Cir. 1981); *see also Employers Ins. of Wausau v. Crown Cork & Seal Co., Inc.*, 905 F.2d 42, 45 (3d Cir. 1990) ("It is an elementary principle that federal courts are courts of limited jurisdiction, empowered to hear cases only as provided for under Article III of the Constitution and congressional enactments pursuant thereto.") In assessing this question, the Court concludes that it lacks jurisdiction to adjudicate the claims presented. The Plaintiff's claims are barred by the Eleventh Amendment and the *Rooker-Feldman* doctrine. The Court would also nonetheless abstain from hearing this case under the *Younger* abstention doctrine.

### A. The Eleventh Amendment Bars All Claims Against the Domestic Relations Units

First, the Court must dismiss the Plaintiff's claims against the Domestic Relations Units of Washington and Allegheny Counties because they are barred by the Eleventh Amendment. Lawsuits against a state agency or department are still suits against the state and barred by the Eleventh Amendment. *William of the Family Rigby v. Miller*, No. 17-cv-1415, 2018 WL 623529, at *2 (W.D. Pa. Jan. 30, 2018) (Schwab, J.). The Commonwealth of Pennsylvania vests judicial power in a unified judicial system, and thus all courts and court agencies are part of the state government and entitled to Eleventh Amendment immunity. *Id.* (citing *Haybarger v. Lawrence County Adult Probation and Parole*, 551 F.3d 193, 198 (3d Cir. 2008)). Under Pennsylvania law, the Domestic Relations Units are subdivisions of the Court of Common Pleas in each county, and thus they are "subunit[s] of the Commonwealth's unified judicial system." *Id.* (citing 42 PA. CONS. STAT. § 961). The same claims would be barred as to state officials at the Domestic Relations Units for acts taken in their official capacity. *Id.* The Plaintiff claims that the Defendants' status as a state-level entity is false and misleading but cites no relevant state statute or caselaw in support of

6

that position. (*See* ECF No. 33, at 10–13.)

The Eleventh Amendment permits lawsuits against a state only where the state consents or Congress by law abrogates Eleventh Amendment immunity under the Fourteenth Amendment. *Benn v. First Judicial District*, 426 F.3d 233, 238 (3d Cir. 2005). The Commonwealth of Pennsylvania has not consented to suits like this one. 42 PA. CONS. STAT. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.") And the Supreme Court has held that 42 U.S.C. § 1983 did not abrogate state immunity under the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332, 342 (1979); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120 (1984) ("if a § 1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting any relief on that claim"). As a result, the claims against the Domestic Relations Units of Washington and Allegheny Counties are dismissed for lack of jurisdiction.

### B. The *Rooker-Feldman* Doctrine Bars the Remaining Claims

In assessing jurisdiction over any remaining claims[4], the Court holds they too must be dismissed for lack of subject matter jurisdiction. The *Rooker-Feldman* doctrine precludes federal district courts from exercising appellate jurisdiction over state court judgments. *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009). The doctrine is implicated when, "in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual." *Id.* (quoting *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996)). *Rooker-Feldman* will apply here if: 1) the plaintiff lost in state court; 2) the state court judgment caused

---

[4] *Rooker-Feldman* would also appear to bar the claims brought against the Domestic Relations Units.

7

the claimed injuries; 3) the judgment was rendered before the plaintiff filed the federal suit; and 4) the plaintiff is inviting the federal court to review and reject the judgment. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010), *cert. denied*, 131 S. Ct. 1798 (2011) ["*Great Western*"]. The doctrine also extends to federal claims that are "inextricably intertwined" with an issue adjudicated by a state court, such as where: "(1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment." *Madera*, 586 F.3d at 232.

The Court concludes that all four (4) elements from *Great Western* apply here. First, the Plaintiff necessarily lost any claim in the state courts that he did not have to make support payments. Second, from what the Court can discern from the filings, all of the Plaintiff's perceived injuries derive from the state court's adjudication and determination that he must make support payments. Third, the state court entered the order requiring him to make payments prior to this suit. And fourth, he asks us to "discharge" that order "COMPLETELY," direct the counties or courts to return his money, and award damages. The Court struggles to imagine a case in which the claims would be more "inextricably intertwined" than the case before it here. To grant relief, the Court would unavoidably have to determine that the state courts were wrong and negate the Plaintiff's support order, and potentially other related state court orders as well. For his part, the Plaintiff argues that *Rooker-Feldman* does not apply because of the Defendants' "pecuniary interest" and later invokes the *Clearfield Trust* doctrine. (ECF No. 33, at 13.) The Court finds the argument unpersuasive, if not bewildering.

The Third Circuit has upheld district courts' invocations of *Rooker-Feldman* in similar contexts. In *Fortune v. Domestic Relations York County*, the Court held that the district court

properly invoked *Rooker-Feldman* and dismissed a plaintiff's § 1983 complaint based on his failure to pay child support and arrearage. 440 F. App'x 58, 58–59 (3d Cir. 2011). The plaintiff in *Tauro v. Baer* also brought § 1983 claims—related to his failure to pay child support—against several Allegheny County judges and "yet unnamed employees of the Domestic Relations Section of Family Division." 395 F. App'x 875, 875–76 (3d Cir. 2010). Applying the four factors from *Great Western*, the Court affirmed the lower court's dismissal based on *Rooker-Feldman*. *Id.* at 877. Thus, even if the Court believed that the Plaintiff's claims had merit, it cannot sit in appellate review of the state courts under *Rooker-Feldman*. For these reasons, the Plaintiff's remaining claims are dismissed for lack of subject matter jurisdiction under *Rooker-Feldman*.

## C. The Applicability of *Younger* Abstention

*Younger* abstention permits the Court to abstain from exercising jurisdiction where resolution of a claim before it would "offend principles of comity by interfering with an ongoing state proceeding."[5] *Frederick of Family Gonora v. Office of Child Support Servs.*, 783 F. App'x 250, 251 (3d Cir. 2019) (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010)). The Court can abstain based on *Younger* when:

> (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims. However, even if these requirements are met, *Younger* abstention is not appropriate if the federal plaintiff can establish that (1) the state court proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstance exists.

*Id.* at 252 (citing *Lazaridis*, 591 F.3d at 666, 670 n.4). Child support proceedings are by their nature judicial, continuous, and implicate important state interests. *See id.* (holding the same for

---

[5] Defendant Allegheny County attached the public docket for the Plaintiff's *ongoing* support proceedings in the Allegheny County Court of Common Pleas as an exhibit to its Motion to Dismiss. (*See* ECF No. 12.)

9

challenged child support orders in New Jersey). As in *Frederick*, the Plaintiff's failure here to "offer any legitimate reason why he could not raise his claims in the [Pennsylvania] state court system" satisfies the third requirement of *Younger*. *Id.* The Plaintiff's claim that *Younger* abstention does not apply because there is a "commercial transaction . . . using contracted courts to meet the Family Support Act quota" is baseless. (ECF No. 33, at 7.) While he is correct that the federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them, the elements of *Younger* apply here. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The Plaintiff's claims therefore are dismissed on this alternative basis.

## IV.  CONCLUSION

For these reasons, the Court does not have subject matter jurisdiction to hear this case. It may be possible for the Plaintiff to raise some of these claims in state court. Defendants' Motions to Dismiss at ECF Nos. 11, 20, and 28 are all granted. The Plaintiff's Complaint is dismissed. Leave to amend the Complaint is also denied as futile, as these jurisdictional issues cannot be cured by an amended pleading. *See Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

An appropriate Order will follow.

Mark R. Hornak
Chief United States District Judge

Dated: January 28, 2020

cc:   All counsel of record